**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **LEIGH DIPACE,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**INTERCONTINENTAL CAPITAL GROUP, INC.,** a New York corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Leigh DiPace ("DiPace" or "Plaintiff DiPace") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Intercontinental Capital Group, Inc. ("ICG" or "Defendant ICG") to stop its practice of sending unsolicited text messages and prerecorded messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct, including injunctive relief. Plaintiff DiPace, for his Complaint, allege as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff DiPace is a natural person residing in the City of Phoenix in the State of Arizona.

2.      Defendant is a company organized and existing under the laws of the State of New York with a principal place of business located at 50 Jericho Quadrangle, Suite 210,

Jericho, New York, 11753.  Defendant does business in this District and throughout the State of New York.

## NATURE OF THE ACTION

3.      In an attempt to increase its bottom line, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages and prerecorded messages to consumers' cellular telephones without consent - and even to those who have registered their numbers on the National Do Not Call Registry, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

4.      By placing prerecorded calls and by sending these text messages, even after being told to stop, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, nuisance, and invasions of privacy that result from the receipt of such text messages and prerecorded messages, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such text messages and prerecorded messages, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant sent the text messages and prerecorded messages knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

5.      The TCPA was enacted to protect consumers from communications like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all solicitation messaging

2

activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

6.      Defendant is a licensed mortgage lender.  To secure business, namely refinancing consumers' mortgages, Defendant contacts them with solicitation text messages and prerecorded messages.

7.      But, unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages and prerecorded messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

**A. Defendant Transmits Text Messages and Prerecorded Messages to Consumers Who Do Not Want Them and To Those Who Have Demanded That Communications to Them Stop.**

8.      Defendant sends text messages and prerecorded messages to consumers' cellular telephones in an attempt to solicit business and ultimately increase its bottom line.

9.      Defendant sends text messages and places telephone calls using prerecorded messages from telephone numbers (516) 260-4997 and (978) 767-2459, among others.

10.     In sending these communications, Defendant took no steps to acquire the prior express written consent of Plaintiff or the Class Members who received the unsolicited messages.

11.     Defendant sent the same (or substantially the same) text messages and prerecorded messages *en masse* to thousands of cellular telephone numbers throughout the United States.

12.     In sending the text messages and prerecorded messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous communications simultaneously (all without human intervention).

13.     Defendant was and is aware that text messages and prerecorded messages were and are being made without the prior express written consent of the recipients.

14.     Defendant knows, or is reckless in not knowing, that its messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized messages.

15.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages and prerecorded messages sent to Plaintiff and the Classes are affiliated with Defendant.[1]

16.     Furthermore, Defendant sends text messages and prerecorded messages to those who have demanded that Defendant stop contacting them.

17.     By sending the text messages and prerecorded messages at issue in this Complaint - and continuing to do so after being told not to - Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such messages,

---

[1] The text message sent to Plaintiff state that it has been sent from "Malcolm from InterContinental Capital Group (Corporate)."  Additionally, the prerecorded messages indicate that the phone calls from ICG.

a loss of value realized for the monies consumers paid to their carriers for the receipt of such messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

18.    In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging and prerecorded messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, solicits consumers in this District, sent and continues to send unsolicited text messages and prerecorded messages to this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

20.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

21.    In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase its customer base. In this case, Defendant has utilized two popular methods of telemarketing: text message marketing and prerecorded message marketing sent *en masse*.

22.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

23.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

24.     Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send solicitation messages to consumers' cellular telephone numbers.

25.     At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing text messages and prerecorded messages are being sent to consumers' cellular telephones through its own efforts and/or its agents'.

26.     Defendant sent (and continues to send) unsolicited telemarketing messages without the prior express written consent of the recipients and even to those who have their number registered on the National Do Not Call Registry. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF LEIGH DIPACE

27.     On October 10, 2012, DiPace's cellular telephone number was registered on the National Do Not Call Registry for the sole purpose of avoiding telemarketing communications on his cellular telephone.

28.     On December 6, 2017, more than 31 days after his number was registered on the National Do Not Call Registry, Plaintiff DiPace began receiving a series of solicitation text messages and prerecorded phone calls from telephone numbers 516-260-4997 and 978-767-2459, respectively, on his cellular telephone.

29.     The purpose of the prerecorded telephone calls and text messages was to solicit DiPace's business regarding refinancing his mortgage.

30.     On December 6, 2017 at 10:11 a.m., DiPace received a call from Defendant using phone number 978-767-2459 on his cellular phone. The call was not answered, but a prerecorded voicemail message was left soliciting him for business.

31.     On December 12, 2017 at 10:06 a.m., DiPace received another prerecorded call from Defendant using phone number 978-767-2459. This call was answered, but it was terminated by DiPace half way through the prerecorded message.

32.     On December 13, 2017 at 1:18 p.m. DiPace received another prerecorded call from Defendant using phone number 978-767-2459. This call was also answered, but it was terminated by DiPace before the full message had played through.

33.     The three (3) aforementioned calls are shown below as they appeared on DiPace's cellular phone:



34.    On approximately December 18, 2017, DiPace received another prerecorded call from Defendant. This time, DiPace was so frustrated he listened to the entire message and selected the option that the message provided so he could speak with an agent. He was then connected with an agent by the name of Malcolm who identified the company as being InterContinental Capital Group. The purpose of the call was to solicit DiPace into acquiring a mortgage. DiPace told the agent that he was not looking to get a mortgage and asked for the communications to stop.

35.    Despite asking for the communications to stop, DiPace received two auto generated text messages on December 20, 2017 at 1:19 p.m. from 516-260-4997. The first message states, "It's Malcolm from InterContinental Capital Group (Corporate). We have been trying to help you with your mortgage financing needs. Please reply if you". The continuation of this message came through as a second text message stating, "have any questions. Txt STOP to quit."

36.    Another two-part text message was sent to DiPace by Defendant on December 27, 2017 at 1:20 p.m. from 516-260-4997. The first message states, "It's Malcolm from

InterContinental Capital Group (Corporate). You filled out a mortgage application recently.

Please let me know if I can help with any". The continuation of this message also came through

as a second text message stating, "questions or scenarios. Txt STOP to quit."

     37.     The two (2) aforementioned text messages are produced below:



*Figure 1 - First text is dated December 20, 2017. Second text is dated December 27, 2017.*

     38.     Frustrated by the two additional unsolicited communications from Defendant,

DiPace replied "Stop" to 516-260-4997. The stop request was acknowledged immediately by the

system Defendant is using stating, "You have successfully been unsubscribed. You will not

receive any more messages from this number. Reply START to resubscribe."

     39.     ICG owns and/or operates telephone numbers 516-260-4997 and 978-767-2459 to

place solicitation communications to consumers.

     40.     DiPace has never provided his prior express written consent to ICG to place

prerecorded calls to his cellular phone or to send solicitation text messages to him, and he has no

business relationship with ICG.

41.     By sending unauthorized text messages as alleged herein, ICG has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of his cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery) and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as ICG fails to receive a call-recipient's prior express written consent and completely ignores, not only those that demand the communications stop, but the telephone numbers associated with the National Do Not Call Registry.

42.     In order to redress these injuries, Plaintiff, on behalf of himself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits solicitation text messages to cellular telephones.

43.     On behalf of the Classes, Plaintiff seeks an injunction requiring ICG to cease all wireless text-messaging and prerecorded messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

44.     Plaintiff bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following four Classes:

> **Text Message No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Prerecorded No Consent Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of

Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using a pre-recorded voice, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiff.

**Autodialed Stop Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using an autodialer, (5) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

**Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

45.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

46.    **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and

belief, Defendant sent text messages to thousands of consumers who fall into the definition of the Classes.  Members of the Classes can be easily identified through Defendant's records.

47.      **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system or prerecorded message to send text messages to members of the Classes;

(c)  whether members of the Classes are entitled to statutory and treble damages based on the willfulness of Defendant's conduct;

(d)  whether Defendant systematically made multiple telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry and whether calls were made to such persons after they requested to no longer be called; and

(e)  whether Defendant obtained prior express written consent to contact any class members.

48.      **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

49.      **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of

conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Text Message No Consent Class)**

50.     Plaintiff repeat and re-allege paragraphs 1-49 of this Complaint and incorporate them herein by reference.

51.     Defendant sent solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

52.     Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an

automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

53.     By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

55.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Prerecorded No Consent Class)**

56.     Plaintiff incorporates by reference paragraphs 1-55 as if fully set forth herein.

57.     Defendant made unsolicited and unwanted prerecorded telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Prerecorded No Consent Class on their cellular telephones in an effort to sell its products and services using a pre-recorded voice as defined in the TCPA.

58.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

59.    Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Prerecorded No Consent Class simultaneously and without human intervention.

60.    Defendant failed to obtain any prior express written consent from Plaintiff and other called parties that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

61.    Any consent that was supposedly obtained required Plaintiff and the class members to receive autodialed and prerecorded calls.

62.    Defendant also failed to obtain any prior express oral consent of the persons receiving its prerecorded telephone calls.

63.    By making unsolicited telephone calls to Plaintiff and members of the Prerecorded No Consent Class's cellular telephones using a prerecorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by doing so without prior express written consent as required.

64.    As a result of Defendant's unlawful conduct, Plaintiff and the members of the Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

65.    Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded No Consent Class.

**THIRD CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed Stop Class)**

66.    Plaintiff incorporates by reference paragraphs 1-65 as if fully set forth herein.

67.    Defendant made unsolicited and unwanted prerecorded calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Class on their cellular telephones after they had informed Defendant, orally and/or through the Defendant's automated prompt system, that they no longer wished to receive such calls from Defendant.

68.    Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

69.    Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed Stop Class simultaneously and without human intervention.

70.    By making unsolicited telephone calls to Plaintiff and other members of the Autodialed Stop Class's cellular telephones after they requested to no longer receive such calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by doing so without prior express written consent.

71.    As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

72.    Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Prerecorded Stop Class.

## FOURTH CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the Do Not Call Registry Class)

73.    Plaintiff incorporates and re-allege by reference paragraphs 1-72 as if fully set forth herein.

74.    47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

75.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

76.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the FCC's July 3, 2003 Report and Order, which in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the

same protections as wireline subscribers.[2]

77.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

78.      Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

79.      Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, and by failing to internally record and honor do not call requests.

80.      Defendant made more than one unsolicited telephone call to Plaintiff and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and other members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

81.      Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

82.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

83.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

84.     An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes, and appointing his counsel as Class Counsel;

85.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

86.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

87.     A declaratory judgment that Defendant's text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

88.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

89.     An order requiring Defendant to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

90.     An injunction requiring Defendant to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

91.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

92.     An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

93.     An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

94.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

95.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: January 12, 2018                    **DeNITTIS OSEFCHEN PRINCE, P.C.**

                                  By:     s/ Ross H. Schmierer
                                          Ross H. Schmierer, Esq. (RS 7215)
                                          315 Madison Avenue, 3rd Floor
                                          New York, New York 10017
                                          (T): (646) 979-3642
                                          rschmierer@denittislaw.com

                                          and

Dated: January 12, 2017                    By:     s/Stefan Coleman
                                          Stefan Coleman, Esquire

21

5 Penn Plaza, 23rd floor
New York, NY 10001
(T):  (877) 333-9427
(F):  (888) 498-8946
Law@StefanColeman.com